**William VANDELFT, Plaintiff–Appellant,**

**v.**

**Carol Lee MOSES, individually and in her capacity as Associate Superintendent of Inmate Services at the Clallam Bay Correction Center; Jesse Crutchfield, indi-**

vidually and in his capacity as Correctional Unit Supervisor at the Clallam Bay Correction Center, Defendants–Appellees.

**No. 92–36566.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 5, 1994 *.

Decided July 26, 1994.

As Amended Oct. 5, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

William Vandelft, pro se.

Douglas W. Carr, Asst. Atty. Gen., Olympia, WA, for defendants-appellees.

Before: WRIGHT, CANBY, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON; Dissent by Judge CANBY.

T.G. NELSON, Circuit Judge:

### OVERVIEW

In this appeal by Washington state prisoner William Vandelft, we are asked to decide whether a prisoner alleging denial of access to adequate library facilities must show actual injury to court access as a part of his 42 U.S.C. § 1983 action against prison officials. We hold that he must show injury, and affirm the grant of summary judgment in favor of the prison officials.

### FACTS AND PROCEDURAL HISTORY

Vandelft was sentenced by the Washington State Superior Court on January 18, 1991, after pleading guilty to several felony charges. The deadline for filing a collateral attack in state court was January 18, 1992, under Wash.Rev.Code § 10.73.090.

On February 21, 1991, while in the custody of the state prison system at Shelton, Washington, Vandelft received an infraction with a sanction of ten days segregation. On March 19, he was transferred to the Clallam Bay Corrections Center (CBCC) for reasons unrelated to the infraction. On March 22, Vandelft filed a personal restraint petition in state court challenging the infraction.

On April 9, the state court sent Vandelft a notice that he would have twenty days to reply to the Department of Corrections' (DOC) response to his petition, once the response was filed. Vandelft claims he did not receive this notice. DOC responded, taking the position that since Vandelft had served the time in segregation called for by the infraction, he was not entitled to relief. Vandelft received the DOC's response but did not file a reply, which would have been due May 13, twenty days after DOC's response was served on April 23.

On May 21, Vandelft was put into the segregation unit at CBCC for protective custody. While in segregation, Vandelft was denied access to a number of requested books because they were hard-bound and not allowed in segregation, or were reference materials and could not be checked out. He did receive copies of exactly-cited cases, which he requested.

On July 16, Vandelft left the segregation unit and was transferred from CBCC. On August 16, his personal restraint petition was dismissed by the state court because it failed to state a ground upon which relief could be granted "by way of a personal restraint petition."

Vandelft filed a complaint pursuant to 42 U.S.C. § 1983 against officials at CBCC claiming they had violated his constitutional rights by denying him access to the courts during the time he was in segregation at CBCC. His denial of access had four factual components: (1) he was denied physical access to the library; (2) he was required to request legal materials by exact citation; (3) he was denied hardcover legal materials; and, (4) he was denied copies of some legal materials because of copyright laws. He claimed that these restrictions resulted in his inability to research and prepare a reply in

his personal restraint action or file a collateral attack on his criminal conviction.

The district court granted the prison officials' motion for summary judgment because Vandelft had not alleged actual injury as the result of being denied actual access to the courts. Vandelft timely filed this appeal, contending that a showing of actual injury is not required, or, if such a showing was required, that he had in fact shown actual injury to his right of access to the courts.

## DISCUSSION

### A.

■ Prisoners have a constitutional right of access to courts guaranteed by the Fourteenth Amendment. *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Included within that right of access to courts is a prisoner's right of access to adequate law libraries or legal assistance from trained individuals. "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498 (emphasis added) (footnote omitted). Furthermore, there is no established minimum requirement for satisfying the access requirement; rather, "a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access." *Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir.1989) (internal quotations omitted).

■ We have established a two-step analysis to determine whether a right of access claim has merit. First, we must decide "whether the claimant alleges a denial of adequate law libraries *or* adequate assistance from persons trained in the law." *Id.* at 1171 (emphasis added) (internal quotations omitted). Second, if the claim does not involve either of the two *Bounds* "core requirements," we must determine whether the plaintiff has alleged an actual injury to court access. *Id.* "Actual injury" is defined as a "specific instance in which an inmate was actually denied access to the courts." *Id.* (internal quotations omitted). There is no actual injury requirement if either of the core requirements under *Bounds* is involved, i.e., adequacy of either the law library or

legal assistance. *Id.* Therefore, in order to state a claim for relief, Vandelft must establish either that: (1) he was denied access to an adequate law library or trained legal assistance; *or,* (2) he was actually denied access to the courts. *See id.*

■ Since DOC did not provide trained legal assistance at CBCC, we will restrict our discussion to library facilities. Vandelft does not challenge the adequacy of the law library itself, but claims only that he was denied reasonable access to it. The issue is whether, if the library is adequate, reasonable access to it is part of the core requirements of *Bounds.* We hold that it is not.

There are three cases that offer some guidance on the issue we face here. In *Sands,* the inmate complained that he was denied possession of a typewriter with a memory of over twenty-eight characters (his had a capacity of forty characters); and that he was denied possession of carbon paper in his cell. While the case established the analytical framework for deciding claims of denial of access to courts, it did not address whether adequate access to a law library was part of the *Bounds* requirement of an adequate law library. *See Sands,* 886 F.2d at 1168–71.

In *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851 (9th Cir.1985), the inmate alleged insufficient access to a library as well as inadequacy of the library itself. We said:

> The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library. However, the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used. The fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts.

*Id.* at 858 (internal citations omitted). We held that both the library and access to it were adequate, so the court in *Lindquist* had no occasion to address the issue we face here. *Id.*

Finally, in *Johnson v. Moore,* 948 F.2d 517, 521 n. 2 (9th Cir.1991), we specifically addressed the question of whether a claim of insufficient access to the law library required a showing of actual injury to court access as a predicate to redress. In *Johnson,* we held

that the law library at CBCC passed constitutional muster. *Id.* at 521 n. 2. We then said:

> Appellant also contends that inadequacies in the breadth of legal materials provided *and in the availability of the CBCC law library* unlawfully denied him access to the courts.... In addition, we have recognized that
>
> > "the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used."
>
> More importantly, Mr. Johnson failed to demonstrate that these inadequacies in any way handicapped his access to the courts.

948 F.2d 517, 521 (9th Cir.1991), quoting from *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858. (Emphasis added.)

*Johnson* supports the district court's decision here.[1] Lack of reasonable access to the law library is not the equivalent of denial of access to the courts. If the law library itself is inadequate, *no amount of access is going to let the prisoner do what he needs to do,* because what he needs is presumably not there. But if access to an adequate library is unreasonably restricted only during a defined time period, then that can perhaps be cured by letting the prisoner have adequate access later. In other words, a prisoner may be able to make up for being too limited in his access to the right materials, but he cannot compensate for the unavailability of the materials he needs. *Cf. Vigliotto v. Terry,* 865 F.2d 1131, 1133 (9th Cir.1989) ("The temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation.")

In his petition for rehearing Vandelft argues that the majority opinion overlooked prior decisions of this court recognizing that a prisoner claiming to have been denied reasonable access to a law library need not show actual injury, citing *Gluth v. Kangas,* 951 F.2d 1504 (9th Cir.1991); *Eldridge v. Block,* 832 F.2d 1132 (9th Cir.1987); and *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986),

*cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). We disagree.

Both *Gluth* and *Toussaint* involved class actions in which prisoners challenged certain prison policies, including access to the prison law library, seeking injunctions. In neither case did we have any reason to decide the actual injury issue, as that was not presented for decision.

*Eldridge* was an appeal by a Maryland prisoner of the dismissal of his complaint against the Sheriff of Los Angeles County. One of his claims was that he had been denied access to a law library prior to his extradition to Maryland. We held that Eldridge's allegation of denial of access to the library appeared sufficient to state a claim under 42 U.S.C. § 1983: "Thus, Eldridge's allegation that Block denied Eldridge access to the jail library also appears sufficient to state a claim under section 1983." 832 F.2d at 1138. We had no occasion to decide whether he needed to show actual injury as a part of that claim.

The function of the injury requirement is to determine whether the unreasonably limited access to the law library actually deprived the prisoner of access to the courts. If no actual injury has resulted, then the rights of the prisoner have not been infringed, and the inquiry need go no further.

A prisoner contending that his right of access to the courts was violated because of inadequate access to a law library must establish two things: First, he must show that the access was so limited as to be unreasonable. Second, he must show that the inadequate access caused him actual injury, *i.e.,* show a "specific instance in which [he] was actually denied access to the courts."[2] *Sands,* 886 F.2d at 1171 (internal quotations omitted). As the district court did, we will limit our analysis to the injury factor.

## B.

■ Vandelft posits two legal problems he wished to pursue while in segregation: His personal restraint petition challenging the

---

1. Vandelft joins the dissent in arguing that the majority "over-reads" *Johnson v. Moore.* However, *Johnson* does support our holding here. The case involved a claim of an inadequate library, which requires no showing of injury, and a claim of inadequate access to the library. We said the prisoner had not shown actual injury. We think the application of *Johnson* to this case is clear.

2. As in this case, the district court considering the inmate's claim may find it more convenient to address the adequacy of the allegation or showing of actual injury prior to deciding whether the access was adequate.

infraction, and a challenge to the conviction itself. As to the first, because he did not receive the court's letter giving him twenty days to reply to the State's response to his personal restraining petition, Vandelft claims that he was relying on Washington Rule of Appellate Procedure 10.2(d), which gave him thirty days to reply. Because the State's response was served on April 23, 1991, Vandelft had until May 23, 1991, to file a reply. May 23 was the second day after he was placed in segregation at CBCC.

If Vandelft was actually relying on the thirty-day period under Rule 10.2(d), his reply should have been substantially prepared by May 21. In his "Affidavit of Evidence" in opposition to the State's motion for summary judgment, Vandelft did not show that his reply had even been started much less that it was done, or nearly done, when he was placed in segregation. His affidavit shows that his first request for legal materials came on May 27, 1991, at a point when his reply was already overdue. That specific request related to his collateral attack, according to his affidavit. Vandelft made no attempt to gain leave from the state court to file a late reply after his release from segregation. Nor did he seek reconsideration of the state court's order on the basis that he had been unable to file a reply. Vandelft simply failed to show that the restrictions on *library* access had any effect on his access to the *court* relative to his personal restraint petition.

Vandelft also claims that the restrictions on library access prevented him from pursuing his collateral attack on the conviction. As noted above, he had one year from entry of the judgment of conviction in which to file a collateral attack in state court.

Of the 365 days he had available to prepare his collateral attack, he was in segregation at CBCC from May 21 to July 16, or a total of 57 days. He has not shown that he made any attempt to prepare and file a collateral attack in any of the 308 other days available to him, nor otherwise shown how the actual library access during these particular 57 days actually denied him access to the courts. He has not shown that he ever started to prepare a draft pleading nor how the restrictions on access during those 57 days prevented him from preparing and completing a pleading. As with his other claim, he has failed to show how the limited access to legal materials while in segregation actually denied him access to the courts to collaterally attack his conviction.

## CONCLUSION

A prisoner must allege and show that denial of reasonable access to a law library caused an actual injury to access to courts in order to have a viable claim against prison officials under 42 U.S.C. § 1983. Appellant did not show a specific instance in which he was actually denied access to the courts, and summary judgment was properly entered against him.

AFFIRMED.

CANBY, Circuit Judge, dissenting:

With all due respect, I cannot agree with the majority's conclusion that Vandelft is required to show "actual injury" in the form of a specific instance of denial of access to court, to maintain his section 1983 due process claim.

As the majority opinion acknowledges, our court has held that no showing of "actual injury" is required when there is a failure of prison authorities to meet at least one of the two "core requirements" of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). *Sands v. Lewis,* 886 F.2d 1166 (9th Cir.1989). Those two core requirements are the alternatives of "providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498 (footnote omitted). It is undisputed that the prison here did not provide the assistance of persons trained in the law, so the issue is whether Vandelft has made a showing that the prison authorities violated *Bounds*'s requirement of "providing prisoners with adequate law libraries." *Id.* It is worth emphasizing the precise wording of *Bounds.* The constitutional duty of the prison authorities is not simply to "have adequate law libraries," but "to *assist inmates* in the preparation and filing of meaningful papers by *providing*

*prisoners with* adequate law libraries." *Id.* (emphasis added).

The crux of Vandelft's complaint was that prisoners like him who were housed in the Segregation Unit had no physical access to the library and were forced to order legal materials by written request using exact citations. He also alleged that he was denied certain books because they were "hard cover," and that he was denied copies of other materials because they were copyrighted. The district court did not reject any of these allegations as unsupported by evidence. It granted summary judgment for the prison authorities on the sole ground that Vandelft had not shown an actual denial of access to the courts in the specific cases he was litigating. It is on this point that I believe the district court and the majority have erred.

In my view, a prisoner has not been "assisted" by being "provided" with an adequate law library if he is denied access to it. "The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library." *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858 (9th Cir.1985). Nor is it sufficient to provide the prisoner with only those materials for which he can produce an exact citation. We held such a system for segregated prisoners unconstitutional in *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). "Simply providing a prisoner with books in his cell, if he requests them, gives the prisoner no meaningful chan[c]e to explore the legal remedies that he might have.... It is unrealistic to expect a prisoner to know in advance what materials he needs to consult." *Id.* at 1109–10 (quoting *Williams v. Leeke,* 584 F.2d 1336, 1339 (4th Cir.1978)). In striking the exact-citation system down, we invoked *Bounds* and neither mentioned nor imposed a requirement of "actual injury." *Toussaint,* 801 F.2d at 1109. *See also Gluth v. Kangas,* 951 F.2d 1504, 1508 (9th Cir.1991) (upholding claim of unreasonable restrictions on access to prison law library without requiring showing of actual injury).

Cases like *Toussaint, Lindquist,* and the present case brought by Vandelft clearly fall into the core requirement of *Bounds* of providing prisoners with adequate law libraries. These are cases where prisoners seek access to the basic resource: books of reported decisions, statutes, rules, as well as treatises and other reference materials. In such cases, we have never required a showing that the prisoner was actually denied access to the courts with regard to a particular case or claim.[1]

The cases where we have required a showing of such "actual injury" are those in which the prisoner, who has access to the basic materials, seeks additional supplies or services. Examples are prisoners who sought a typewriter with a certain memory capacity, along with carbon paper, *Sands,* 886 F.2d at 1168, or unlimited free copying, *Johnson v. Moore,* 948 F.2d 517, 521 (9th Cir.1991).[2] We properly applied the "actual injury" requirement in those cases because they fall quite wide of the core requirement of providing the prisoner with an adequate library.

Vandelft's case falls clearly within the core of *Bounds. Bounds* imposes a constitutional

---

1. Of course, Vandelft is not entitled to *unlimited* access to the library; reasonable time and place restrictions may be imposed. *Lindquist,* 776 F.2d at 858. Here, however, we are not dealing with reasonable library hours, or a reasonable limitation of the number of inmates who may use the library at one time. Nor are we dealing with a defendant who has been denied physical access to the library on the ground that his presence would threaten institutional security; in any event, such a prisoner must be provided alternative legal assistance. *Toussaint,* 801 F.2d at 1110. The restriction here was lengthy and not tailored to a specific security risk; Vandelft alleges that he was held in the segregation unit for nearly two months, and that the denial of physical access and the limitation to exactly-cited legal materials imposed upon him during that time was a rule for all segregated prisoners.

2. The majority over-reads *Johnson v. Moore.* Although we observed there that any deficiencies in the library did not obstruct Johnson's access to the courts, we held that the library met minimum constitutional standards. *Johnson,* 948 F.2d at 521 n. 2. We also stated that "[a] right of access claim *other than one alleging inadequate law libraries* or alternative sources of legal knowledge must be based on an actual injury." *Id.* at 521 (emphasis added). We then held that Johnson's claim for free photocopying failed for lack of a showing of "actual injury." *Id. Johnson* thus adheres to the distinction between cases concerning access to an *adequate law library,* where no actual injury need be shown, and those concerning access to other supplies and equipment, where it must.

duty on prisons to assist prisoners by providing an adequate law library. It defies common sense to hold that the prison does not violate this duty when it denies those same prisoners access to the library.

The majority suggests that it may be justifiable temporarily to deny Vandelft access, if access is granted shortly thereafter. That point, however, simply goes to the issue whether reasonable access in fact *has* been denied, not to the requirement that the district court and the majority here have imposed—that Vandelft show that the denial had an adverse effect on specific litigation he was conducting. Vandelft's showing that he was held in the segregation unit for nearly two months, under the limitations to access that he has set forth, was a sufficient demonstration of unreasonable denial of access to survive summary judgment. Under *Bounds,* he need not show actual injury. I would therefore reverse the judgment of the district court, and remand the matter for trial.